UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TACHICA CALLAHAN,
    *Plaintiff*,

v.

RAYMOND HACKLING and EMILY
GONZALEZ,
    *Defendants*.

No. 3:19-cv-1679 (JAM)

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

In this employment discrimination action, *pro se* plaintiff Tachica Callahan has sued numerous defendants with various federal and state law claims arising from the termination of her employment as a nurse's aide. At this point in the case, the only defendants who remain are two of Callahan's former supervisors, Emily Gonzalez and Raymond Hackling.

Gonzalez and Hackling have now filed a bare-bones motion for summary judgment. They contend that they were not personally involved with terminating Callahan's employment and that she was terminated for absenteeism. Because Callahan has filed an affidavit disputing these assertions, I conclude that there remain genuine issues of material fact that require me to deny the defendants' motion for summary judgment.

BACKGROUND

Prior to October 2017, Tachica Callahan worked as a nurse's aide for Meriden Care Center, LLC (doing business as Silver Springs Care Center).[1] According to Callahan's complaint, her work involved "assisting nurses with general care of patients, including moving, lifting, and monitoring patients, as well as assisting patients to stand, ambulate, shower, dress, and use the restroom."[2]

---

[1] Doc. #123 at 1 (¶ 1); Doc. #53 at 17.
[2] Doc. #1 at 3 (¶ 7).

In the summer of 2017, Callahan injured her back at work.[3] This injury made it difficult for her to perform some of her job functions, including physically moving patients.[4] Callahan emailed defendant Raymond Hackling (a management employee at Meriden) regarding her health status on June 22, 2017.[5] She stated that she could not "work the heaviest assignments in the building" that day, and she asked for co-workers or another replacement to be permitted to cover her shift.[6]

Several months later, on October 2, 2017, Callahan went to the hospital emergency room with back pain.[7] The next day, she emailed Hackling (among others) explaining that she had been to the emergency room, that she had "previously made the company aware of [her] health issue," and that she might not be able to complete her shift that day.[8]

On October 24, 2017, Callahan was fired.[9] According to her affidavit, both the defendants Hackling and Emily Gonzalez made the decision to terminate her employment, doing so shortly after her email explaining that her injury might keep her out of work.[10]

Callahan attests that she was discriminated against because of her disabling injury and retaliated against for fighting the company's earlier attempt to fire her.[11] In contrast, an affidavit from Hackling maintains that Callahan was fired for being "habitually absent from work without any approved leave" even after "receiv[ing] progressive discipline for her repeated violations of the employer's established written attendance policy."[12] He further maintains that "Emily

---

[3] Doc. #124 at 4, 8 (¶¶ 4, 26-27); Doc. #39-2 at 2, 8.
[4] Doc. #53 at 9.
[5] Ibid.
[6] Ibid.
[7] Id. at 102.
[8] Doc. #14-3 at 11.
[9] Doc. #123 at 2 (¶ 2).
[10] Doc. #124 at 7 (¶¶ 22-23); see also Doc. #14-3 at 11.
[11] Doc. #124 at 4-5, 7 (¶¶ 4, 11, 22-23).
[12] Doc. #121 at 1 (¶ 3).

Gonzalez and I were management employees . . . at the time of Ms. Callahan's termination, but neither one of us was involved in tracking or calculating the absences that resulted in Ms. Callahan's suspension and then termination."[13]

In 2019, about two years after she was fired, Callahan brought this suit.[14] She sued her employers, her union representatives, and several of her supervisors, including Gonzalez and Hackling.[15] Her complaint alleges violations of Title VII of the Civil Rights Act, the Americans with Disabilities Act, 42 U.S.C. §§ 1981 and 1983, and several state statutes.[16]

At earlier points in this litigation, I granted one defendant's unopposed motion to dismiss and dismissed several other defendants after Callahan failed to properly serve them.[17] Nevertheless, Gonzalez and Hackling were properly served and answered the complaint.[18]

Gonzalez and Hackling have now moved for summary judgment.[19] They maintain that "[i]n order for Ms. Callahan to prevail on any of her claims against Mr. Hackling and Ms. Gonzalez . . . she must prove that: (a) she was terminated for reasons *other than* absenteeism in accordance with the policy negotiated between the employer and the Union; *and* (b) Mr. Hackling and Ms. Gonzalez were the impetus for such termination."[20] And they argue that Callahan has not provided evidence to raise a genuine dispute about either one of these facts.[21] They rely on a one-page affidavit sworn and submitted by Hackling.[22]

---

[13] *Id.* at 1 (¶ 5).
[14] Doc. #1.
[15] *Id.* at 1 (¶ 1).
[16] *Id.* at 7-10.
[17] Doc. #71, #87, #102. At one point, the defendants claimed that Callahan's claims were barred by a release agreement. I invited the defendants to file a motion for summary judgment on this basis but they have not done so. Doc. #54 at 5.
[18] Doc. #78.
[19] Doc. #119.
[20] Doc. #119-1 at 3.
[21] *Ibid.*
[22] Doc. #121.

## DISCUSSION

The principles governing my review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough to allow a reasonable jury to decide the case in favor of that party. If so, I must deny summary judgment. My role at this stage is not to judge the credibility of witnesses or to resolve close and contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Kerson v. Vermont L. Sch., Inc.*, 79 F.4th 257, 262 (2d Cir. 2023).[23]

In addition, Callahan is proceeding *pro se* in this action. "[I]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants . . . particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). But this rule of solicitude "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003).

The defendants' motion is unusual in that it contains very little legal analysis. It does not analyze the particulars of any of Callahan's causes of action. Instead, it assumes that any of Callahan's claims would require her to prove that Hackling and Gonzalez were personally

---

[23] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

involved in the termination of Callahan's employment and also that they terminated her for improper reasons other than absenteeism.

I will assume for argument's sake that the defendants are correct about what Callahan must prove. And I will further assume that Hackling's affidavit—which does not evince any first-hand knowledge or basis for Hackling to (1) know whether Gonzalez was uninvolved in Callahan's termination or (2) have first-hand knowledge of the reasons for a termination with which he claims he was not involved—is legally sufficient to shift the burden to Callahan to produce some evidence to support her claims against both defendants. *But see Bethea v. JP Morgan Chase & Co.*, 2019 WL 4805141, at *2 n.4 (E.D.N.Y. 2019) (discounting parts of affidavit that lacked a foundation in personal knowledge).

Even doing so, Callahan has carried her burden to put these facts in dispute. She has filed an affidavit that is competent evidence for summary judgment purposes and that contradicts the defendants' version of events. *See Barrows v. Brinker Rest. Corp.,* 36 F.4th 45, 50-51 (2d Cir. 2022) (collecting cases holding that plaintiff's testimony or affidavit alone can defeat summary judgment).

According to Callahan's affidavit, Gonzalez told her on October 24, 2017 that "we decided to terminate you," and "the administrator Ray Hackling terminated my position."[24] She attests that Hackling "stormed out of his office and went berserk," and then "[t]he two [Hackling and Gonzalez] had the front desk receptionist Faith stop me at the third set of doors."[25] These

---

[24] Doc. #124 at 7 (¶ 23) (emphasis and underlining under "we" omitted).
[25] *Ibid.*

sworn statements are enough to create a genuine issue of fact concerning the personal involvement of both Hackling and Gonzalez in Callahan's termination.

Callahan's affidavit also contests the defendants' claim that she was habitually absent. She attests that she called out sick three weeks before her termination but that she had "sick time available to exhaust" and that she had otherwise "not called out or been late in 5-6 months."[26] These statements are enough to create a genuine issue of fact to undermine the defendants' claim that Callahan was fired for reasons of absenteeism.

In short, the defendants rest their entire motion for summary judgment on two factual assertions. But because Callahan has properly disputed both assertions, I must deny the defendants' motion for summary judgment.

## CONCLUSION

For the reasons stated above, the Court DENIES the defendants' motion for summary judgment (Doc. #119).

It is so ordered.

Dated at New Haven this 30th day of September 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[26] *Id.* at 7 (¶ 22); Doc. #53 at 9.